## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LMP CLIFTON 001 HOLDINGS, LLC, | ECF CASE |
| Plaintiff, | Civil Action No. **1:22-cv-565** **(MAD/DJS)** |
| -against- | |
| JAMES M. ZAPPONE, ZAPPONE CHRYSLER JEEP DODGE, INC., ZAPPONE PROPERTY MANAGEMENT, LLC., and YOUNG AMERICA ABSTRACT LLC, | **COMPLAINT** |
| Defendants. | |

Plaintiff LMP Clifton 001 Holdings, LLC ("**Plaintiff**"), by and through its undersigned attorneys, as and for its Complaint against the Defendants James M. Zappone ("**Zappone**"), Zappone Chrysler Jeep Dodge, Inc. ("**Zappone Chrysler**"), and Zappone Property Management, LLC ("**Zappone Property**") (collectively, the "**Zappone Defendants**"), and nominal-defendant and interested party Young America Abstract LLC ("**Escrow Agent**" and with the Zappone Defendants, the "**Defendants**"), hereby alleges as follows:

## NATURE OF THE ACTION

1.      This action arises from the proposed sale of a Chrysler Jeep Dodge RAM automotive dealership located at 1780 State Route 9, Clifton Park, New York 12065, and all of its ancillary business (the "**Dealership**").  The proposed sale contemplated Plaintiff acquiring the assets of Zappone Chrysler pursuant to a Dealership Asset Purchase Agreement, as amended (collectively, the "**APA**"), and certain real property owned by Zappone Property pursuant to a Real Estate Purchase and Sale Agreement (the "**Real Estate Contract**").  Plaintiff and Zappone Property assert competing claims to a $1 million deposit (the "**Deposit**") posted by Plaintiff

pursuant to the APA and held by Escrow Agent pursuant to an Escrow Agreement (the "**Escrow Agreement**" and with the APA and Real Estate Contract, collectively, the "**Agreements**").

2.      When the closing for the APA and Real Estate Contract did not occur on February 28, 2022, Zappone Property improperly (a) certified to the Escrow Agent that Plaintiff failed to close on an unidentified "Contract," as the date for closing had passed; (b) demanded the Escrow Agent pay the Deposit to Zappone Property; and (c) objected to Plaintiff's demand to the Escrow Agent for the return of the Deposit due to the termination of the APA and Real Estate Contract plus pre- and post-judgment interest.

3.      Accordingly, Plaintiff hereby seeks a declaratory judgment declaring the rights and obligations of the parties under the Agreements and awarding Plaintiff its attorneys' fees and costs, as permitted by the APA and Real Estate Contract.

## THE PARTIES

4.      Plaintiff is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business located at 500 East Broward Boulevard, Suite 1900, Fort Lauderdale, Florida 33394.

5.      On information and belief, Zappone is an individual who resides in and is a citizen of the State of New York.

6.      On information and belief, Zappone Chrysler is a corporation incorporated and existing under the laws of the State of New York, with its principal place of business located at 8556 State Route 22, Granville, New York 12832.

7.      On information and belief, Zappone Property is a limited liability company organized and existing under the laws of the State of New York, with its principal place of business located at 126 Fuller Road, Queensbury, New York 12804.

2

8.     On information and belief, Escrow Agent is a limited liability company organized and existing under the laws of the State of New York, with its principal place of business located at 175 East Shore Road, Upper Level, Great Neck, New York 11023.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because this is an action between citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

10.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 2201 *et seq.* because an actual case or controversy exists between the parties, as evidenced by the facts and circumstances described herein.

11.     The Court has personal jurisdiction over each of the Defendants because each of the Defendants is domiciled in the State of New York and has submitted to the general jurisdiction of the state and federal courts in the State of New York pursuant to Section 13(i) of the APA.

12.     Personal jurisdiction also exists over each of the Defendants pursuant to Rule 4 of the Federal Rules of Civil Procedure and New York Civil Practice Law and Rules ("CPLR") 301, 302(a)(1) and 302(a)(4) because, upon information and belief, each of the Defendants:

    a.   transacts business within the State of New York;

    b.   supplies goods and/or services within the State of New York; and

    c.   owns, uses and possesses real property situated within the State of New York.

13.     Venue is proper in the United States District Court, Northern District of New York pursuant to 28 U.S.C. § 1391(b)(1) because at least one of the Defendants is a resident of this Judicial District for such purposes.  Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this Judicial

3

District and a substantial part of the property that is the subject of this action is situated in this District.

14.     Venue is also proper in the United States District Court, Northern District of New York pursuant to Section 13(i) of the APA because the real property that is the subject of the Agreements is located in Saratoga County, New York.  Section 13(i) of the APA provides that all parties to the APA waive any objections on the basis of venue.

## RELEVANT FACTS

**A.  The Relevant Agreements and Payment of the Deposit**

*i.     The Real Estate Contract*

15.     On or about July 28, 2021, Plaintiff (as buyer) and Zappone Property (as seller) executed the Real Estate Contract regarding Plaintiff's purchase of the fee simple title and associated rights to the real property at 1780 and 1784 State Route 9, Clifton Park, New York 12065, which is the real property on which the Dealership is located and operated (the "**Real Property**").  A copy of the Real Estate Contract is attached as **Exhibit 1**.

16.     Notably, the Real Estate Contract does ***not*** require any deposit be made by Plaintiff in connection with the sale of the Real Property.

17.     Pursuant to Section 8.1 of the Real Estate Contract, Plaintiff was "not obligated to close the transaction" unless a host of conditions not otherwise waived by Plaintiff were satisfied on or prior to the Closing Date, including the following:

> (f) Asset Purchase Agreement. The transactions contemplated under the Asset Purchase Agreement and any ancillary documents related thereto, shall have closed, or close concurrently with this Agreement.

18.     Section 8.3 of the Real Estate Contract, entitled "Failure of Conditions," provides, in relevant part, that "Purchaser may terminate this Agreement, by notice to Seller, if any of

*ACTIVE 64961800v7*

Purchaser's conditions precedent to Closing have not been satisfied as of the Closing Date or has become incapable of being satisfied by the Closing Date[.]"

### ii.    *The APA*

19.    On or about August 9, 2021, Plaintiff (as buyer), Zappone (as principal), Zappone Chrysler (as seller), and Escrow Agent executed a Dealership Asset Purchase Agreement (the "**Dealership Agreement**") for the sale and transfer of the Dealership from Zappone Chrysler to Plaintiff.  A true and correct copy of the Dealership Agreement is attached as **Exhibit 2.**

20.    Section 1(a) of the Dealership Agreement provides, in relevant part, that the "Closing Date Deadline" was "one hundred twenty (120) days after the Effective Date; **provided, however,** that if, as of the seventh (7th) day prior to such date, the approvals or other conditions set forth in **Sections 8(a)** and **8(c)** of this Agreement have not been obtained, the Closing Date Deadline will automatically be extended for thirty (30) days, time being of the essence.  The Closing will occur on a mutually agreed to business day by the Closing Date Deadline within ten (10) days after the satisfaction or waiver of the pre-Closing Date conditions contained in **Section 8** below.]"  (Emphasis in original.)

21.    Section 1(a) of the Dealership Agreement further provides that "[t]he Closing will occur on a mutually agreed to business day by the Closing Date Deadline within ten (10) days after the satisfaction or waiver of the pre-Closing Date conditions contained in **Section 8** below." (Emphasis in original.)

22.    Section 1(d) of the Dealership Agreement also provides that "[u]pon the sooner to occur of Closing or termination of this Agreement, the [Deposit] will be paid as provided in **Section 12(a)**."  (Emphasis in original.)

23.    Section 8 of the Dealership Agreement addresses the "Conditions to Obligations" of Plaintiff as buyer, and provides that Plaintiff's obligation "to consummate the transactions

5

contemplated by this Agreement are subject to the fulfillment (or express written waiver by [Plaintiff]) prior to or at the Closing, of all of the following conditions," which relevantly include, the following:

> "(a) <u>Manufacturer Approval</u>.  Manufacturer issued to [Plaintiff] a new Dealership Sales and Service Agreement, or commitment therefor, on terms and conditions acceptable to [Plaintiff] in its sole discretion, approving [Plaintiff's] board of directors and other designees, permitting [Plaintiff] to operate the Dealership …" [and]

> \*      \*      \*

> "(k) <u>Financing</u>.  [Plaintiff] shall have received loan commitments on terms and conditions satisfactory to [Plaintiff] in its sole discretion for both the floor plan and acquisition in connection with this transaction."

24.     Section 12(a) of the Dealership Agreement provides, in relevant part, that the Dealership Agreement may be terminated:

> "(v) By [Plaintiff] if any of the conditions to the obligations of [Plaintiff] set forth in **Section 8** have not been satisfied by the third (3rd) business day prior to the designated Closing Date Deadline (other than due to [Plaintiff's] breach of this Agreement) … at which time the [Deposit] will be promptly paid to [Plaintiff]."   [and]

> \*      \*      \*

> "(vii) By [either party] if the Closing has not occurred by the Closing Date Deadline, for any reason other than a breach by the terminating Party, at which time the [Deposit] will be promptly paid to [Plaintiff]."

(Emphasis in original.)

25.     Section 13(h) of the Dealership Agreement provides that upon receipt of the Deposit, the Escrow Agent is to execute and distribute an "Escrow Receipt" to confirm it has received the Deposit and is "holding the same on deposit in accordance with the provisions hereof."

*ACTIVE 64961800v7*

6

### iii.   The First Amendment to the Dealership Agreement

26.   On or about August 23, 2021, Plaintiff, Zappone and Zappone Chrysler executed The First Amendment to Dealership Asset Purchase Agreement (the "**First Amendment**"), which amended, restated and added various sections to the Dealership Agreement.  A true and correct copy of the First Amendment is attached as **Exhibit 3.**

### iv.   The Second Amendment to the Dealership Agreement

27.   On or about December 15, 2021, Plaintiff, Zappone and Zappone Chrysler executed a Second Amendment to the Dealership Asset Purchase Agreement (the "**Second Amendment**"), which amended, restated and added various sections to the Dealership Agreement.  A true and correct copy of the Second Amendment is attached as **Exhibit 4.**

28.   Pursuant to the Second Amendment, the Closing Date Deadline provided for in Section 1(a) of the Dealership Agreement was amended to February 28, 2022.

29.   Notably, while the Second Amendment amended the Closing Date Deadline, it did not eliminate or in any way amend the conditions to closing provided for in Section 8 of the APA.

### v.   The Escrow Agreement

30.   On or about August 9, 2021, Plaintiff (as buyer), Zappone Property (as seller) and Escrow Agent executed an Escrow Agreement.  A true and correct copy of the Escrow Agreement is attached as **Exhibit 5**.

31.   The recitals to the Escrow Agreement erroneously assert that Plaintiff is obligated under the Real Estate Contract to pay the Deposit.  Contrary to such recital, the Real Estate Contract does ***not*** require the Plaintiff to make any deposit whatsoever.  Rather, the APA required Plaintiff to provide the Deposit to Escrow Agent pursuant to the terms and conditions of the APA.

32.   Section 1 of the Escrow Agreement provides that Plaintiff shall deliver the Deposit to Escrow Agent.

*ACTIVE 64961800v7*

33.     Section 3 of the Escrow Agreement provides that Escrow Agent must hold the Deposit and all interest accrued thereon and may only dispose of the same in accordance with the provisions in Section 3 of the Escrow Agreement.

34.     Pursuant to Section 3(a) of the Escrow Agreement, any notice of objection to a party's demand for the payment of the Deposit was to be made by the non-demanding party within 10 days of any demand being made upon Escrow Agent for payment of the Deposit.  Upon timely objection, Escrow Agent need not honor any demand for payment of the Deposit.

35.     Relatedly, Section 3(b)(i) of the Escrow Agreement provides, in relevant part, that Escrow Agent must provide any written demand for release of the Deposit from Plaintiff or Zappone Property to the other party and give that other party 10 days to object to such a demand.

36.     Section 3(b)(i)(A)-(B) of the Escrow Agreement further provides that if an objection to a demand for return of the Deposit is made, the Escrow Agent may either (i) "continue to hold the Deposit until Escrow Agent receives a written agreement of" Plaintiff and Zappone Property "directing the disbursement of the Deposit," or (ii) take any actions Escrow Agent "deems necessary or desirable, in its sole and absolute discretion, to discharge and terminate its duties under th[e] Escrow Agreement."

37.     Section 19 of the Escrow Agreement provides that its "provisions … shall survive its termination and the termination of, or closing under, the Contract."  Accordingly, all of the above obligations survive termination of the Escrow Agreement.

### vi.     *The Deposit and Escrow Receipt*

38.     Pursuant to Section 1(d) of the APA, Plaintiff caused the Deposit to be delivered to Escrow Agent on or about August 9, 2021.

39.     Following Escrow Agent's receipt of the Deposit and a copy of the Dealership Agreement, Escrow Agent executed and delivered the "Escrow Receipt" attached to the Dealership

8

Agreement confirming that the Escrow Agent (a) received a copy of the executed Dealership Asset Purchase Agreement on July 28, 2021; (b) received the Deposit; and (c) reviewed the Dealership Agreement and "agreed to be bound by those provisions of the Dealership Asset Purchase Agreement which pertain to Escrow Agent and its duties thereunder."  A true and correct copy of the Escrow Receipt is attached as **Exhibit 6.**

### B.  Plaintiff Seeks Financing and Manufacturer Approval

40.     Thereafter, Plaintiff sought, but was unable to obtain, financing for the purchase of the Dealership.  At the same time, Plaintiff was unable to obtain manufacturer approval.

41.     Thus, the conditions to Plaintiff's obligation to close as set forth in Sections 8(a) and 8(k) of the APA were not satisfied and such conditions were never waived in a writing executed by Plaintiff.

42.     As a result, the closing for the APA did not occur by February 28, 2022, and thus, neither did the closing of the Real Estate Contract, which was to take place contemporaneously, through the fault of neither Plaintiff nor the Zappone Defendants.

### C.  Zappone Property's Baseless Demand for the Deposit

43.     On or about March 9, 2022, Escrow Agent sent a notice to Plaintiff transmitting a copy of a demand by Zappone Property (dated March 4, 2022) (the "**Zappone Property Demand**").  A true and correct copy of Escrow Agent's transmittal letter with the Zappone Property Demand is attached as composite **Exhibit 7**.

44.     By the Zappone Property Demand, Zappone Property sought the release of the Deposit to Zappone Property, without reference to any provision of the Real Estate Contract, the APA, or the Escrow Agreement.  Specifically, the Zappone Property Demand stated as follows:

> [D]emand is made for the release of the deposit to Zappone Property
> Management, LLC for failure on the part the [sic] Purchaser to close
> by the date as set forth in the Contract.   Zappone property

9

Management, LLC certifies that the date for the closing set forth in
the Contract has passed.

45.     Plaintiff has not breached any of its obligations under any of the Agreements.

46.     Plaintiff was not notified of any alleged default under any of the Agreements nor
provided ten (10) days to cure any alleged default prior to receipt of the Zappone Property Demand.

47.     As of the date of this Complaint, Plaintiff has not received notice of termination of
any of the Agreements from Defendants.

48.     As of the date of this Complaint, pursuant to Section 8 of each of the APA and the
Real Estate Contract, Plaintiff's obligation to close on any of the transactions contemplated by the
APA and/or the Real Estate Contract has not been triggered.

49.     Accordingly, Zappone Property is not entitled to payment of the Deposit.

50.     Indeed, contrary to what is suggested in the Zappone Property Demand, the
transactions at issue have not closed through no fault of Plaintiff.  Rather, as stated in Plaintiff's
March 10, 2022 notice of objection to Zappone Property's demand (the "**Purchaser's Objection
& Demand**"), Plaintiff's obligation to consummate the transaction contemplated by the APA had
not been triggered because the conditions in Sections 8(a) and (k) of the APA had not occurred.
As a result, Plaintiff's obligation to consummate the transaction contemplated by the Real Estate
Contract was also not triggered because the conditions of Section 8 of the APA had not occurred.
Thus, the Purchaser's Objection & Demand demanded that the Deposit be returned to Plaintiff.  A
true and correct copy of the Purchaser's Objection & Demand is attached as **Exhibit 8**.

51.     On or about March 11, 2022, Zappone Property objected to Purchaser's Objection
and Demand for the return of the Deposit to the Plaintiff (the "**First Zappone Objection**").  A
copy of the First Zappone Objection is attached as **Exhibit 9**.

52.     The First Zappone Objection fails to identify any rationale nor cite any provision in the APA, the Real Estate Contract or the Escrow Agreement for its objection.

**D.  The Parties Discuss Extending the Closing Date**

53.     On or about March 11, 2022, representatives of Plaintiff and the Zappone Defendants communicated regarding extending the Closing Date Deadline to June 30, 2022.

54.     The Zappone Defendants, however, refused to agree to such an extension absent Plaintiff waiving the financing condition in Section 8(k) of the APA.

**E.  Plaintiff's Termination of the Contracts and Defendants' Objections to Payment of the Deposit to Plaintiff**

55.     On or about March 21, 2022, after the parties were unable to reach agreement on an extension, Plaintiff sent a termination notice (the "**Termination Notice**") to the Zappone Defendants notifying them that Plaintiff was terminating the APA, pursuant to Sections 12(a)(v) and 12(a)(vii), and the Real Estate Contract, pursuant to Section 8.3 thereof.  A true and correct copy of the Termination Notice is attached as **Exhibit 10.**  The Termination Notice notified the Zappone Defendants that pursuant to Sections 12(a)(v) and 12(a)(vii) of the APA, the Deposit was to be promptly paid to Plaintiff by Escrow Agent.

56.     On or about March 21, 2022, Plaintiff sent the Termination Notice to Escrow Agent, along with a demand for the release of the Deposit ("**Plaintiff's Escrow Release Demand**").  Plaintiff's Escrow Release Demand instructed Escrow Agent to pay the Deposit to Plaintiff pursuant to Section 3(a)(iv) of the Escrow Agreement.  A true and correct copy of Plaintiff's Escrow Release Demand is attached as **Exhibit 11**.

57.     On or about March 24, 2022, Escrow Agent transmitted the Termination Notice and Plaintiff's Escrow Release Demand to the Zappone Defendants.  A true and correct copy of Escrow Agent's transmittal letter is attached as **Exhibit 12**.

*ACTIVE 64961800v7*

58.     On or about March 27, 2022, Zappone Property sent Escrow Agent a notice of objection to Plaintiff's Escrow Release Demand ("**Second Zappone Objection**").  Once again, the Second Zappone Objection failed to identify any rationale nor cite any provision in the APA, the Real Estate Contract or the Escrow Agreement for its objection.  A true and correct copy of the Second Zappone Objection is attached as **Exhibit 13**.

59.     On or about March 29, 2022, Escrow Agent transmitted the Second Zappone Objection to Plaintiff.  In that transmittal letter, Escrow Agent informed Plaintiff that it had "elected to continue to hold the Deposit until Escrow Agent receives a written agreement of [Plaintiff and Zappone Property] directing the disbursement of the Deposit."  A true and correct copy of Escrow Agent's transmittal letter is attached as **Exhibit 14**.

60.     Therefore, in addition to specific conditions precedent to Closing set forth in Section 8 of the APA and the Real Estate Contract, respectively, not having been satisfied and Plaintiff having no obligation to close, Plaintiff also had (i) a specific right to terminate the APA under Section 12(a)(v) of the APA because the conditions in Section 8 had not been satisfied (particularly, the conditions in Sections 8(a) and 8(k)), and (ii) a general right to terminate the APA under Section 12(a)(vii) because the Closing had not occurred by the Closing Date Deadline, through no fault of Plaintiff.

61.     All conditions precedent to the bringing of this action have occurred or have been performed or waived.

62.     Plaintiff has retained the law firm of Greenberg Traurig, P.A. and is obligated to pay it a reasonable hourly fee.

63.     Section 13(a) of the APA provides that "in the event of any litigation between or among the Parties to enforce any provisions or rights hereunder, the unsuccessful Party, as

*ACTIVE 64961800v7*

determined by a final judgment, shall pay to the successful Party therein all costs and expenses of such Party (and any of such Party's agents, such as attorneys or accountants) expressly including, but not limited to, reasonable attorneys' fees and court costs incurred therein by such successful Party, which costs, expenses and attorneys' fees will be included in and as a part of any judgment rendered in such litigation."

64.     Section 14.13 of the Real Estate Contract provides "[i]f either party commences an action to enforce the terms of, or resolve a dispute concerning, this Agreement, the prevailing party in such action shall be entitled to recover all costs and expenses incurred by such party in connection therewith, including reasonable attorneys' fees."

## CLAIM FOR RELIEF
### (Declaratory Relief)

65.     Plaintiff repeats and realleges Paragraphs 1-59.

66.     This is an action for a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202, and CPLR § 3001.

67.     A bona fide justiciable and substantial controversy exists regarding payment of the Deposit.

68.     The controversy is between parties with adverse legal interests as to either present or prospective obligations.

69.     A judgment would serve a useful purpose in clarifying or settling the legal issues as to the entitlement to payment of the Deposit by the Escrow Agent.

70.     A judgment would finalize the controversy and offer relief from uncertainty.

**WHEREFORE**, Plaintiff respectfully requests that judgment be entered against Defendants, jointly and severally, as follows:

13

*ACTIVE 64961800v7*

A.    A declaratory judgment declaring that Plaintiff is entitled to a return of its Deposit, declaring that the Zappone Defendants are not entitled to the Deposit, and directing the Escrow Agent to release the Deposit to Plaintiff;

B.    A declaratory judgment awarding Plaintiff reasonable attorneys' fees, costs and expenses pursuant to Section 13(a) of the APA and Section 14.13 of the Real Estate Contract;

C.    Pre-and post-judgment interest at the New York statutory rate of nine percent (9%) per annum; and

D.    Such other and further relief as this Court deems just and proper.

**Dated**: Albany, New York
            May 27, 2022

                                        **GREENBERG TRAURIG, LLP**

                                        By:*/s/ Kelly L. McNamee*
                                                Kelly L. McNamee, Esq. (Bar No. 520670)
                                                54 State Street 6th Floor
                                                Albany, New York 12207
                                                Telephone: (518) 689-1400
                                                Facsimile: (518) 689-1499
                                                Email: mcnameek@gtlaw.com


                                                Jon L. Swergold, Esq.
                                                *Pro Hac Vice Forthcoming*
                                                401 East Las Olas Boulevard
                                                Suite 2000
                                                Fort Lauderdale, FL 33301
                                                Telephone: (945) 765-0500
                                                Facsimile: (945) 765-1477
                                                Email: swergold@gtlaw.com

                                                *Attorneys for Plaintiff LMP Clifton 001 Holdings, LLC*