UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LMP CLIFTON 001 HOLDINGS, LLC,

          **Plaintiff/Counter Defendant,**

  vs.                                        1:22-CV-00565
                                                              (MAD/DJS)

JAMES M. ZAPPONE, ZAPPONE CHRYSLER
JEEP DODGE, INC., ZAPPONE PROPERTY
MANAGEMENT, LLC., and YOUNG AMERICA
ABSTACT, LLC,

          **Defendants/Counter Claimants.**
_____

**APPEARANCES:**                                 **OF COUNSEL:**

**GREENBERG TRAURIG, LLP – ALBANY**       **KELLY L. MCNAMEE, ESQ.**
54 State Street
6th Floor
Albany, New York 12207
Attorneys for Plaintiff/Counter Defendant

**GREENBERG TRAURIG, P.A.**                  **JON L. SWERGOLD, ESQ.**
401 East Las Olas Boulevard, Suite 2000
Fort Lauderdale, Florida 33301
Attorneys for Plaintiff/Counter Defendant

**MONACO COOPER LAMME & CARR, PLLC**   **JONATHAN E. HANSEN, ESQ.**
1881 Western Ave, Suite 200
Albany, New York 12203
Attorneys for Defendants/Counter Claimants
James M. Zappone, Zappone Chrysler Jeep Dodge, Inc.,
and Zappone Property Management, LLC

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

    On May 27, 2022, Plaintiff/Counter Defendant LMP Clifton Holdings, LLC, ("Plaintiff")

1

filed a complaint seeking to recover $1 million of earnest money deposited with an escrow agent as part of a contract to buy a car dealership and associated property. *See* Dkt. No. 1. On June 29, 2022, Defendants/Counter Claimants James M. Zappone, Zappone Chrysler Jeep Dodge, Inc., and Zappone Property Management, LLC ("Defendants") filed an answer with counterclaims against Plaintiff, seeking to recover the earnest money and alleging that Plaintiff breached the contract. *See* Dkt. No. 9.

Currently before the Court are Defendants' motion to dismiss, *see* Dkt. No. 20-1, Plaintiff's cross-motion for judgment on the pleadings and response in opposition to the motion to dismiss, *see* Dkt. No. 21, Defendants' memorandum in opposition to Plaintiff's cross-motion, *see* Dkt. No. 22, and Plaintiff's reply. *See* Dkt. No. 26.

## II. BACKGROUND

A.   Contract Formation and Provisions

Plaintiff is a limited liability company incorporated in Delaware with a principal place of business in Florida. *See* Dkt. No. 1 at ¶ 4. Defendant Zappone is an individual residing in New York State. *See id.* at ¶ 5. Defendant Zappone Chrysler is a corporation incorporated in the State of New York, with its principal place of business located in Granville, New York. *See id.* at ¶ 6. Defendant Zappone Property is a limited liability company organized and existing under the State of New York, with its principal place of business in Queensbury, New York. *See id.* at ¶ 7. The escrow agent, Young America Abstract LLC ("Escrow Agent"), *see* Dkt. No. 1-6 at 2, is a limited liability company organized and existing under the State of New York, with its principal place of business located in Great Neck, New York. *See* Dkt. No. 1 at ¶ 8.

This action arises out of contracts for the sale of an automotive dealership and property located at 1780 State Route 9, Clifton Park, New York 12065. *See id.* at ¶ 1; Dkt. No. 20-1 at 3.

2

Plaintiff contracted to buy the related assets per a Dealership Asset Purchase Agreement ("DAPA"), which was later amended, and certain real property pursuant to the Real Estate Purchase and Sale Agreement ("REA") from Defendants. *See* Dkt. No. 1 at ¶ 1. As a part of the DAPA, Plaintiff deposited $1 million with an escrow agent pursuant to an Escrow Agreement. *See id.*

    *1. Real Estate Agreement[1]*

On or about July 28, 2021, Plaintiff, as buyer, and Zappone Property, as seller, executed the REA regarding Plaintiff's purchase of the fee simple title and associated rights to the real property at 1780 and 1784 State Route 9, Clifton Park, New York 12065, which is the real property on which the Dealership is located and operated. *See id.* at ¶ 15. The REA indicated that

> [u]nless otherwise agreed in writing between the parties hereto, the Closing shall take place contemporaneously with that of the Asset Agreement and the other Real Estate Agreements (as defined in the Asset Agreement), but no later than December 31, 2021 (the 'Closing Date'). Purchaser hereby covenants to work with Seller during the Closing process to keep Seller informed of the progress and timing under the Asset Agreement so as to enable the Closing to occur under this Agreement as contemplated.

Dkt. No. 1-2 at 17.

REA Section 8.1 contains conditions precedent. *Id.* at 16. Section 8.3 states that

> [i]f any condition specified herein is not satisfied on or before the Closing, then (i) Purchaser may terminate this Agreement, by notice to Seller, if any of Purchaser's conditions precedent to Closing have not been satisfied as of the Closing Date or has become incapable of being satisfied by the Closing Date, and (ii) Seller may terminate this Agreement, by notice to Purchaser, if any of Seller's conditions precedent to Closing have not been satisfied as of the Closing Date

---

[1] *The Court assumes Parties' familiarity with the full agreement, Dkt. No. 1-2, the DAPA, Dkt. No. 1-3, the DAPA first amendment, Dkt. No. 1-4, the DAPA second amendment, Dkt. No. 1-5, and the Escrow Agreement, Dkt. No. 1-6, but will recite portions particularly relevant to this action.*

> or has become incapable of being satisfied by the Closing Date. Upon a termination in accordance with this Section 8.3, this Agreement will have no further force or effect and the parties shall thereupon be relieved of all further obligations hereunder other than the Surviving Obligations.  The parties' rights under this Section 8 are cumulative and are in addition to the other rights and remedies available to them under this Agreement or any other agreement, including Section 7.2 of the Asset Agreement.  Notwithstanding anything else set forth herein, in the event the closings under the Asset Agreement or the other Real Estate Agreements do not close for any reason, this Agreement shall automatically terminate without any further action required by Purchaser or Seller and the provisions of Section 7.2 of the Asset Agreement shall apply.

*Id.* Section 14.13, specifies that "[e]ach of the parties hereto undertakes and agrees to execute and deliver such documents, writings and further assurances as may be reasonably required to carry out the intent and purposes of this Agreement." *Id.* at 21.

    *2. Dealership Asset Purchase Agreement*

On or about August 9, 2021, Plaintiff, as buyer, Defendant Zappone, as principal, Defendant Zappone Chrysler, as seller, and Escrow Agent executed a DAPA for the sale and transfer of the Dealership from Defendant Zappone Chrysler to Plaintiff.  *See* Dkt. No. 1 at ¶ 19.

    Section 1(a) of the DAPA described the closing date as follows:

> The "Closing Date Deadline" means the date which is one hundred twenty (120) days after the Effective Date; provided, however, that if, as of the seventh (7th) day prior to such date, the approvals or other conditions set forth in Sections 8(a) and 8(c) of this Agreement have not been obtained, the Closing Date Deadline will automatically be extended for thirty (30) days, time being of the essence.  The Closing will occur on a mutually agreed to business day by the Closing Date Deadline within ten (10) days after the satisfaction or waiver of the pre-Closing Date conditions contained in Section 8 below.

Dkt. No. 1-3 at 2 (emphasis omitted).

    DAPA Section 1(d), Earnest Money, states that

> [w]ithin three (3) business days after the first date that Buyer has signed this Agreement and received from Seller a complete, fully executed copy of this Agreement signed by Seller and Principal … Buyer shall deliver to Escrow Agent $1,000,000.00 as earnest money (the "Earnest Money") to be held in trust by Escrow Agent for and on behalf of the Parties pursuant to this Agreement. On the Closing Date, if the Closing occurs, the Earnest Money will be returned to Buyer (or applied to the purchase price owed, if so directed by Buyer in writing). Upon the sooner to occur of Closing or termination of this Agreement, the Earnest Money will be paid as provided in **Section 12(a).**

*Id.* at 4 (emphasis in original).

DAPA Section 8, Conditions to Obligations of Buyer, states that

> [t]he obligation of Buyer to consummate the transactions contemplated by this Agreement are subject to the fulfillment (or express written waiver by Buyer) prior to or at the Closing, of all of the following conditions:
> (a) Manufacturer Approval. Manufacturer issued to Buyer a new Dealership Sales and Service Agreement, or commitment therefor, on terms and conditions acceptable to Buyer in its sole discretion, approving Buyer's board of directors and other designees, permitting Buyer to operate the Dealership at the Real Property as Seller has operated it in the past.
> …
>
> (k) Financing. Buyer shall have received loan commitments on terms and conditions satisfactory to Buyer in its sole discretion for both the floor plan and acquisition in connection with this transaction.

*Id.* at 19-20 (emphasis omitted).

DAPA Section 12(a), termination, provides that

> [t]he Parties may exercise their respective rights of termination by the delivery of written notice of termination to the other Party at any time prior to the completion of the Closing (including as provided in Section 5). A default by the "Buyer" or the "Seller" under, and as defined in, the Real Estate Contracts will be deemed to be a default hereunder by Buyer or Seller, respectively, and termination of the Real Estate Contracts will automatically terminate this Agreement. This Agreement and the transactions

5

> contemplated hereby may be terminated on or before the Closing Date as follows:
>
> …
>
> (iii) By Buyer if a breach of any provision of this Agreement has been committed by Seller or Principal and such breach has not been either (A) cured within ten (10) days after written notice to Seller, or (B) waived in writing by Buyer, at which time the Earnest Money will be promptly paid to Buyer upon the joint instructions of the Parties;
>
> …
>
> (vii) By Buyer or Seller, if the Closing has not occurred by the Closing Date Deadline, for any reason other than a breach by the terminating Party, at which time the Earnest Money will be promptly paid to Buyer.

*Id.* at 28-29.  Section 12(b) provides that

> [i]f prior to Closing Buyer breaches this Agreement and fails to cure as provided above, then Seller's and Principal's sole right and exclusive remedy will be to terminate this Agreement by giving written notice thereof to Buyer and then Seller may take the Earnest Money as liquidated damages in full settlement of all claims, remedies or causes of actions against Buyer under this Agreement, including the remedy of specific performance and other forms of equitable relief.  It is impossible to estimate more precisely the damages which might be suffered by Seller and Principal upon Buyer's default.  Seller's and Principal's retention of the Earnest Money is intended not as a penalty, but as full liquidated damages.

*Id.* at 29.

DAPA Section 13(a), Transaction and Enforcement Costs, states that

> [n]otwithstanding the foregoing, in the event of any litigation between or among the Parties to enforce any provisions or rights hereunder, the unsuccessful Party, as determined by a final judgment, shall pay to the successful Party therein all costs and expenses of such Party (and any of such Party's agents, such as attorneys or accountants) expressly including, but not limited to, reasonable attorneys' fees and court costs incurred therein by such successful Party, which costs, expenses and attorneys' fees will be included in and as a part of any judgment rendered in such litigation.

6

Dkt. No. 1-3 at 30.

The original closing date deadline was December 7, 2021. *See id.* at 2. In an integration section, the DAPA states that "[t]ime is of the essence in this Agreement." *Id.* at 31; *see also id.* at 2.

### 3. *First Amendment to the DAPA*

On or about August 23, 2021, Plaintiff, Defendant Zappone and Defendant Zappone Chrysler executed the first amendment to the DAPA ("First Amendment"), which amended, restates, and added various sections to the Dealership Agreement. *See* Dkt. No. 1 at ¶ 26; Dkt. No. 1-4. The main changes in the First Amendment are to DAPA Section 6(h) regarding manufacturer notifications, and a new section regarding premises compliance. *See* Dkt. No. 1-4 at 3.

### 4. *Second Amendment to the DAPA*

On or about December 15, 2021, Plaintiff, Defendant Zappone and Defendant Zappone Chrysler executed a Second Amendment to the DAPA ("Second Amendment"), which amended, restates, and added various sections to the DAPA. *See* Dkt. No. 1 at ¶ 27. Pursuant to the Second Amendment, the closing date provided for in Section 1(a) of the DAPA was amended to February 28, 2022. *See id.* at ¶ 28; Dkt. No. 1-5 at 2.

### 5. *The Escrow Agreement*

On or about August 9, 2021, Plaintiff, as buyer, Defendant Zappone Property, as seller, and Escrow Agent executed an Escrow Agreement, *see* Dkt. No. 1 at ¶ 30, which provided information about the process of a deposit, *see id.*; Dkt. No. 1-6 at 2, the instructions for Escrow Agent's holding of the deposit and notices for payment of the earnest money deposit, *see* Dkt. No. 1-6 at 3, and the process for written demands for the payment of the earnest money from Escrow Agent, and any objections thereto. *See id.* at 4-5. Pursuant to Section 1(d) of the DAPA, Plaintiff

7

caused the Deposit to be delivered to Escrow Agent on or about August 9, 2021, *see* Dkt. No. 1 at ¶ 38, and the Escrow Agent completed the Escrow Receipt.  *See id.* at ¶ 39 (quoting Dkt. No. 1-7 at 2).

      *6. Actions after Escrow Receipt*

Plaintiff claims that "Plaintiff sought, but was unable to obtain, financing for the purchase of the Dealership.  At the same time, Plaintiff was unable to obtain manufacturer approval," *id.* at ¶ 40, causing "the conditions to Plaintiff's obligation to close as set forth in Sections 8(a) and 8(k) of the APA were not satisfied and such conditions were never waived in a writing executed by Plaintiff."  *Id.* at ¶ 41.  Ultimately, Plaintiff claims that "[a]s a result, the closing for the APA did not occur by February 28, 2022, and thus, neither did the closing of the Real Estate Contract, which was to take place contemporaneously, through the fault of neither Plaintiff nor the Zappone Defendants."  *Id.* at ¶ 42.

Escrow Agent received a property demand from Defendants dated March 4, 2022.  *See* Dkt. No. 1-8 at 2-3; Dkt. No. 1 at ¶ 43.  Plaintiff was "cc'd" on Defendants' letter, which indicated they sought release of the earnest money "for failure on the part of the Purchaser to close by the date as set forth in the Contract."  Dkt. No. 1-8 at 3.  Escrow Agent then sent a notice to Plaintiff that it had received Defendants' demand.  *See id.* at 2; Dkt. No. 1 at ¶ 43.  On March 10, 2022, Plaintiff sent to Escrow Agent an objection and demand for the return of the deposit to Plaintiff, which Defendants then objected to.  *See* Dkt. No. 1 at ¶ 51 (citing Dkt. No. 1-9 at 4); Dkt. No. 1-10.

On or about March 11, 2022, representatives of Plaintiff and Defendants communicated regarding extending the Closing Date Deadline to June 30, 2022.  *See* Dkt. No. 1 at ¶ 53.  Plaintiff claims Defendants "refused to agree to such an extension absent Plaintiff waiving the financing

condition in Section 8(k) of the APA." *Id.* at ¶ 54.

On or about March 21, 2022, after the parties were unable to reach agreement on an extension, Plaintiff sent a termination notice ("Termination Notice") to Defendants notifying them that Plaintiff was terminating the DAPA, purportedly pursuant to Sections 12(a)(v) and 12(a)(vii), and the REA, pursuant to Section 8.3 thereof. *See id.* at ¶ 55 (citing Dkt. No. 1-11). The Termination Notice notified Defendants that the deposit was to be promptly paid to Plaintiff by Escrow Agent. *See id.* On or about March 21, 2022, Plaintiff sent the Termination Notice to Escrow Agent, along with a demand for the release of the Deposit ("Plaintiff's Escrow Release Demand"). Plaintiff's Escrow Release Demand instructed Escrow Agent to pay the Deposit to Plaintiff pursuant to Section 3(a)(iv) of the Escrow Agreement. *See id.* at ¶ 56 (citing Dkt. No. 1-12). On or about March 24, 2022, Escrow Agent transmitted the Termination Notice and Plaintiff's Escrow Release Demand to Defendants. *See id.* at ¶ 57 (citing Dkt. No. 1-12). On or about March 27, 2022, Defendant Zappone Property Management sent Escrow Agent a notice of objection to Plaintiff's Escrow Release Demand. *See id.* at ¶ 58; Dkt. No. 1-14 at 2. On or about March 29, 2022, Escrow Agent transmitted this objection to Plaintiff. *See* Dkt. No. 1 at ¶ 58; Dkt. No. 1-15 at 2. In that transmittal letter, Escrow Agent informed Plaintiff that it had "elected to continue to hold the Deposit until Escrow Agent receives a written agreement of [Plaintiff and Zappone Property] directing the disbursement of the Deposit." Dkt. No. 1 at ¶ 59 (citing Dkt. No. 1-15).

### A.   Party Contentions

Plaintiff's complaint maintains that (1) it did not breach any of its agreements, *see id.* at ¶ 45; (2) Plaintiff was not notified of any alleged default under any of the Agreements nor provided ten (10) days to cure any alleged default prior to receipt of the Zappone Property Demand, *see id.*

9

at ¶ 46; (3) as of the date of the Complaint, Plaintiff had not received notice of termination of any of the Agreements from Defendants, *see id.* at ¶ 47; (4) pursuant to Section 8 of both the DAPA and the REA, Plaintiff's obligation to close on any of the transactions contemplated by the DAPA and the REA has not been triggered, *see id.* at ¶ 48; and (5) ultimately, Defendants are not entitled to payment of the deposit. *See id.* at ¶ 49. Specifically, Plaintiff argues that it had a right to terminate under DAPA Section 12(a)(v) and 12(a)(vii) because

> the transactions at issue have not closed through no fault of Plaintiff. Rather, as stated in Plaintiff's March 10, 2022 notice of objection to Zappone Property's demand (the "Purchaser's Objection & Demand"), Plaintiff's obligation to consummate the transaction contemplated by the APA had not been triggered because the conditions in Sections 8(a) and (k) of the APA had not occurred. As a result, Plaintiff's obligation to consummate the transaction contemplated by the Real Estate Contract was also not triggered because the conditions of Section 8 of the APA had not occurred. Thus, the Purchaser's Objection & Demand demanded that the Deposit be returned to Plaintiff.

*Id.* at ¶ 50; *see id.* at ¶ 60. Plaintiff claims that it has

> a specific right to terminate the APA under Section 12(a)(v) of the APA because the conditions in Section 8 had not been satisfied (particularly, the conditions in Sections 8(a) and 8(k)), and [] a general right to terminate the APA under Section 12(a)(vii) because the Closing had not occurred … through no fault of Plaintiff.

*Id.* at ¶ 60. Plaintiff seeks a declaratory judgment declaring its rights under the agreements and awarding Plaintiff attorneys' fees and costs as designated by the DAPA and the REA. *See id.* at ¶ 3.

Defendants argue that DAPA Section 12(a)(v) does not apply as termination via this section is only available before the closing date deadline. *See* Dkt. No. 20-1 at 6-10. Defendants argue that DAPA Section 12(a)(vii) does not apply because Plaintiff had already breached the time is of the essence clause and so could not terminate in this manner. *See id.* at 9-10.

10

Accordingly, Defendants argue that because there was a "time being of the essence" clause, Plaintiff's failure to close by the closing date constituted a breach, incapable of being cured, thereby entitling Defendants' to the earnest money. *See id.* at 6.

## I. DISCUSSION

A.    Standard of Review

Rule 12(c) of the Federal Rules of Civil Procedure provides that "after the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Judgment on the pleadings, pursuant to Fed. R. Civ. P. 12(c) is appropriate where material facts are undisputed and a judgment on the merits is possible merely by considering the contents of the pleadings. *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988); *Allstate Ins. Co. v. Vitality Physicians Grp. Prac. P.C.*, 537 F. Supp. 3d 533, 545 (S.D.N.Y. 2021). "Judgment pursuant to Rule 12(c) can be particularly appropriate in breach of contract cases involving legal interpretations of the obligations of the parties" because "initial interpretation of a contract is a question of law for a court." *VoiceAge Corp. v. RealNetworks, Inc.*, 926 F. Supp. 2d 524, 529 (S.D.N.Y. 2013).

A motion for judgment on the pleadings is governed by "the same standard" as a motion to dismiss under Rule 12(b)(6). *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010) (quoting *Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009)). Therefore, on such a motion, the Court must accept as true all of the non-movant's well pleaded factual allegations and draw all reasonable inferences in favor of the non-movant. *See, e.g.*, *Davidson v. Flynn*, 32 F.3d 27, 29 (2d Cir. 1994); *VoiceAge Corp.*, 926 F. Supp. 2d at 529. "When a plaintiff moves for judgment on the pleadings, the question for determination is whether on the undenied facts alleged in the complaint and assuming as true all the material allegations of fact in the answer, the plaintiff is

entitled to judgment as a matter of law." *Allstate Ins. Co.*, 537 F. Supp. 3d at 545 (internal quotation marks omitted).  "In other words, if a defendant's answer admits, alleges, or fails to deny facts which, taken as true, would entitle a plaintiff to relief on one or more claims supported by the complaint, then the plaintiff's Rule 12(c) motion should be granted." *Id.*

"On a 12(c) motion, the court considers 'the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case.'" *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (quoting *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009)).  The Court may also review any document incorporated by reference in one of the pleadings.  *See Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004).  Finally, the Court may consider a document not specifically incorporated by reference but on which the complaint relies, and which is integral to it.  *See Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 305 (2d Cir. 2021).

**B.     Analysis**

"[I]n order to determine the contracting parties' intent, a court looks to the objective meaning of contractual language, not to the parties' individual subjective understanding of it." *Ashwood Cap., Inc. v. OTG Mgmt., Inc.*, 99 A.D.3d 1, 6 (1st Dep't 2012) (quoting *Hotchkiss v. Nat'l City Bank of N.Y.*, 200 F. 287, 293 (S.D.N.Y. 1911)).  "The question of intent is for the court to decide as a matter of law if the language employed is unambiguous; if, however, it is not free from ambiguity and resort must be had to extrinsic evidence, then intent must be determined by the finder of fact." *Keis Distribs. Inc. v. Northern Distrib. Co., Inc.*, 226 A.D.2d 967, 968 (3d Dep't 1996) (citing *Four Seasons Hotels v. Vinnik*, 127 A.D.2d 310, 316 (1st Dep't 1987)).

*1. Termination Rights*

Plaintiff argues that it had a right to terminate the contracts because of the failure of

conditions precedent to occur and, therefore, did not breach by failing to perform the contract.

Plaintiff's arguments largely rest on REA Section 8.3 and three DAPA provisions: Section 12(a)(v), Section 12(a)(vii), and the conditions precedent provision.

>   Under REA Section 8.3, entitled Failure of Conditions,

>> [i]f any condition specified herein is not satisfied on or before the Closing, then (i) Purchaser may terminate this Agreement, by notice to Seller, if any of Purchaser's conditions precedent to Closing have not been satisfied as of the Closing Date or has become incapable of being satisfied by the Closing Date …

Dkt. No. 1-2 at 17.

>   DAPA 12(a) generally provides that

>> [t]he Parties may exercise their respective rights of termination by the delivery of written notice of termination to the other Party at any time prior to the completion of the Closing (including as provided in Section 5).  A default by the "Buyer" or the "Seller" under, and as defined in, the Real Estate Contracts will be deemed to be a default hereunder by Buyer or Seller, respectively, and termination of the Real Estate Contracts will automatically terminate this Agreement.

Dkt. No. 1-3 at 28.

DAPA Section 12(a)(vii) states that the contract may be terminated "[b]y Buyer or Seller, if the Closing has not occurred by the Closing Date Deadline, for any reason other than a breach by the terminating party …." *Id.* at 29.

"[A] condition precedent is 'an act or event, other than a lapse of time, which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises.'" *MHR Cap. Partners LP v. Presstek, Inc.*, 12 N.Y.3d 640, 645 (2009) (quoting *Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*, 86 N.Y.2d 685, 690 (1995)).  "[I]t must clearly appear from the agreement itself that the parties intended a provision to operate as a condition

13

precedent." *Ashkenazi v. Kent S. Assocs., LLC*, 51 A.D.3d 611, 611 (2d Dep't 2008) (quoting *Kass v. Kass*, 235 A.D.2d 150, 159 (2d Dep't 1997), *aff'd*, 91 N.Y.2d 554 (1998)). "Express conditions precedent, which are those agreed to and imposed by the parties themselves, 'must be literally performed.'" *Preferred Mtge. Brokers v. Byfield*, 282 A.D.2d 589, 590 (2d Dep't 2001) (quoting *Klewin Bldg. Co. v. Heritage Plumbing & Heating, Inc.*, 42 A.D.3d 559, 560 (2d Dep't 2007)) (additional quotations omitted).

Here, the plain language of the contract's express conditions precedent in DAPA Section 8 excused performance if Plaintiff failed to receive financing and manufacturer approval. *See* Dkt. No. 1-3 at 19 ("Manufacturer issued to Buyer a new Dealership Sales and Service Agreement, or commitment therefor, on terms and conditions acceptable to Buyer in its sole discretion …. "). The DAPA states that should a condition precedent fail to be satisfied, Plaintiff has a right to terminate the contract before or after the closing date.[2] *See id.* at 28. Further, the contract clearly anticipates the possibility that the contract could fail to close without a breach, and Plaintiff would receive the earnest money when its duty to perform never materialized. *See id.* at 29 ("[I]f the Closing has not occurred by the Closing Date Deadline, for any reason other than a breach by the terminating Party, at which time the Earnest Money will be promptly paid to Buyer"). In this case, neither party disputes that these conditions precedent failed to be fulfilled. *See* Dkt. No. 1-2 at 17. Plaintiff notified Defendants in writing of its termination of the contract. *See* Dkt. No. 1-11. Accordingly, as the conditions precedent were not satisfied, and Plaintiff did not waive them, Plaintiff did not breach the contract by failing to perform, and Plaintiff properly terminated the agreement.

---

[2] The plain meaning of "closing date" per the contracts is the date on which the contract closes. *See* Dkt. No. 1-3 at 2. The DAPA clearly states that the closing could fail to occur by the closing date deadline, and that the contract could continue thereafter. *See id.* at 28.

Defendants claim that Plaintiff cannot have terminated rightfully under the DAPA because Plaintiff violated the time is of the essence clause. *See* Dkt. No. 20-1. The time is of the essence clause, found in Section 1(a) of the DAPA, states that

> [t]he "Closing Date Deadline" means the date which is one hundred twenty (120) days after the Effective Date; provided, however, that if, as of the seventh (7th) day prior to such date, the approvals or other conditions set forth in Sections 8(a) and 8(c) of this Agreement have not been obtained, the Closing Date Deadline will automatically be extended for thirty (30) days, time being of the essence.

Dkt. No. 1-3 at 2. The integration subsection of the DAPA states more generally that "[t]ime is of the essence in this Agreement." Dkt. No. 1-3 at 31. The Second Amendment of the DAPA states that "[t]he Parties hereby amend and restate Section 1(a) to extend the Closing Date until February 28, 2022." Dkt. No. 1-5 at 2.

The parties disagree about the significance of such clause in connection to the entirety of the contract. Defendants argue that

> [b]y [March 21, 2022, when LMP sent a letter to Zappone to terminate the contract], [Plaintiff] was already in breach for failing to close by the closing date (and had already been notified of such breach by Zappone's counsel) because time was of the essence pursuant to Section 13(e) of the APA.

Dkt. No. 22 at 4. Plaintiff characterizes Defendants' argument as follows: that "Plaintiff's failure to timely satisfy the conditions precedent constitutes a breach of the DAPA's time is of the essence provision." Dkt. No. 26 at 9 (citing Dkt. No. 22 at 4-5). Plaintiff argues that because of the conditions precedent, the only way for Plaintiff to have been in breach would be for Plaintiff to have breached an express or implied covenant, and that Defendants failed to plead the defense of the implied covenant of good faith and fair dealing, so such argument is waived. *See id.* at 9-10.

15

"[W]hen there is a declaration that time is of the essence … each party must tender performance on law day unless the time for performance is extended by mutual agreement." *Grace v. Nappa*, 46 N.Y.2d 560, 565 (1979) (collecting cases).  When a condition precedent is not fulfilled, however, such is not the case.  Here, Plaintiff did not close on February 28, 2022. *See* Dkt. No. 1-5 at 2.  On or about March 21, 2022, Plaintiff sent a termination notice (the "Termination Notice") to Defendants notifying them that Plaintiff was terminating the APA, pursuant to Sections 12(a)(v) and 12(a)(vii), and the Real Estate Contract, pursuant to Section 8.3 thereof.  *See* Dkt. No. 1 at ¶ 55 (citing Dkt. No. 1-10).  DAPA Section 12(a)(v) states that the contract may be terminated "by Buyer if any of the conditions or obligations of Buyer set forth in Section 8 [which includes buyer financing] have not been satisfied by the third (3rd) business day prior to the Designated Closing Deadline."

Defendants proffered analogous cases are misplaced as they did not involve a failure of a condition precedent.  *See EC, L.L.C. v. Eaglecrest Manufactured Home Park, Inc.*, 275 A.D.2d 898, 899-900 (4th Dep't 2000) (deciding whether there was a valid time is of the essence clause and applying the decision to the facts); *Perillo v. De Martini*, 54 A.D.2d 691, 691-92 (2d Dep't 1976) (same); *Greto v. Barker 33 Assoc.*, 161 A.D.2d 109, 110-11 (1st Dep't 1990) (same); *Palmiotto v. Mark*, 145 A.D.2d 549, 549-50 (2d Dep't 1988) (same); *Mohen v. Mooney*, 162 A.D.2d 664, 665-66 (2d Dep't 1990) (same); *Woodwork Display Corp. v. Plagakis*, 137 A.D.2d 809, 811-13 (2d Dep't 1988) (same); *Zahl v. Greenfield*, 162 A.D.2d 449, 449-50 (2d Dep't 1990); *Dub v. 47 East 74th Street Corp.*, 204 A.D.2d 145, 145 (1st Dep't 1994) (deciding whether a vendor who sent a time is of the essence letter needed to abide by said letter).

*Grace v. Nappa* provides the most apt analogy to the issue at hand.  *Grace v. Nappa*, 46 N.Y.2d 560, 566-67 (1979).  In that case, the New York Court of Appeals found that a failure of

material term of the contract, an estoppel certificate in that case, excused performance and permitted the recovery of down payments, even when time was of the essence in the contract. *See id.* The Court finds that as a condition precedent was not satisfied, Plaintiff was not in breach of the contract for nonperformance.

As Plaintiff was not in breach of the express contract, the only portion of the contract Plaintiff could have been in breach of was an implied covenant of good faith and fair dealing. The covenant of good faith and fair dealing is an affirmative defense or counterclaim. *See Marine Midland Bank, N.A. v. Yoruk*, 242 A.D.2d 932, 933 (4th Dep't 1997); *Am. Home Energy Inc. v. AEC Yield Cap. LLC*, No. 21-CV-1337, 2022 WL 595186, *18 (E.D.N.Y. Feb. 28, 2022). Federal Rule of Civil Procedure 8(c) requires that "[i]n responding to a pleading, a party must affirmatively state any [] affirmative defense …." Fed. R. Civ. P. 8(c). If not promptly pleaded, such defense is waived. *See Davis v. Bryan*, 810 F.2d 42, 44 (2d Cir. 1987) (citations omitted). Here, Defendants did not raise such affirmative defense, *see* Dkt. No. 9 at 8-11, and has still not purported to do so. *See* Dkt. No. 22 at 6-7. Therefore, the affirmative defense of the implied covenant of good faith and fair dealing is waived.

Accordingly, the failure to satisfy that condition precedent permitted Plaintiff to terminate the contract either before or after the closing date and Plaintiff did not breach the contract.

*2. Remedies*

Under New York law, courts interchangeably use "earnest money," "earnest money deposit," "escrow deposit," or simply "deposit." *See Donerail Corp. N.V. v. 405 Park LLC*, 100 A.D.3d 131, 134 (1st Dep't 2012). Generally,

> a vendee who, without breach on the part of the vendor, refuses to perform a contract for the purchase of real estate, cannot recover from the vendor either the amount paid on the purchase price, or a

17

> deposit by him as earnest money … where the vendor is ready, able, and willing to perform upon his part.

*Dmochowski v. Rosati*, 96 A.D.2d 718, 718-19 (4th Dep't 1983) (collecting cases) (internal quotations omitted).  However, a party is entitled to the return of earnest money where they had a viable right under the provisions of the contract to terminate the contract.  *See K. Hovnanian Cos. of N.Y., Inc. v. JGM Assocs.*, 178 A.D.2d 903, 903-05 (3d Dep't 1991).  Here, the earnest money section states that "upon the sooner to occur of Closing or termination of this Agreement, the Earnest Money will be paid as provided in Section 12(a)." Dkt. No. 1-3 at 4.  DAPA Section 12(a)(v) dictates that the earnest money will be paid to Plaintiff.  *See id.* at 29.  As Plaintiff rightfully canceled or terminated the contract, Plaintiff is entitled to the earnest money.

"[A]ttorney's fees are incidents of litigation and a prevailing party may not collect them from the loser unless an award is authorized by agreement between the parties, statute or court rule." *Hooper Assoc. v. AGS Computers*, 74 N.Y.2d 487, 491 (1989).  Both sides request the invocation of DAPA Section 13(a), wherein

> in the event of any litigation between or among the Parties to enforce any provisions or rights hereunder, the unsuccessful Party, as determined by a final judgment, shall pay to the successful Party therein all costs and expenses of such Party (and any of such Party's agents, such as attorneys or accountants) expressly including, but not limited to, reasonable attorneys' fees and court costs incurred therein by such successful Party, which costs, expenses and attorneys' fees will be included in and as a part of any judgment rendered in such litigation.

Dkt. No. 1-3 at 30.  *See G.M. Data Corp. v. Potato Farms, LLC*, 95 A.D.3d 592, 594 (1st Dep't 2012) ("The court's calculation of damages properly included an award of reasonable attorneys' fees and costs, as provided for in the parties' agreements").  "To be considered a prevailing party,' one must simply prevail on the central claims advanced, and receive substantial relief in

consequence thereof." *Sykes v. RFD Third Ave. I Assoc., LLC*, 39 A.D.3d 279, 279 (1st Dep't 2007).  In the instant action, the central claim is for the award of the money held in escrow, and Plaintiff has prevailed on that issue.  Therefore, Plaintiff is entitled to recover "all costs and expenses … including, but not limited to, reasonable attorneys' fees" in this litigation.  Dkt. No. 1-3 at 30.

## I. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, the Court hereby

**ORDERS** that Plaintiff's cross-motion for judgment on the pleadings (Dkt. No. 21) is **GRANTED**; and the Court further

**ORDERS** that Defendants' motion to dismiss (Dkt. No. 20-1) is **DENIED**; and the Court further

**ORDERS** that Plaintiff shall move for attorneys' fees and costs within **THIRTY (30) DAYS** of the date of this Memorandum-Decision and Order;[3] and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: September 14, 2023
   Albany, New York

Mae A. D'Agostino
U.S. District Judge

---

[3] The parties are encouraged to confer regarding the issue of attorneys' fees and costs.  If this issue can be resolved without further action from this Court, counsel shall inform the Court in writing.  Upon such notice, judgment will be entered and this case will be closed.